FILED

SEP 21 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 06-0148 MJJ |
|---|---|
| Plaintiff, | DETENTION ORDER |
| v. | |
| BRIAN TROY ABERLE, et al., | |
| Defendants. / | |

After a hearing on June 29, 2006, Magistrate Judge Vadas ordered Mr. Aberle detained pending disposition of the charges he faces in this court. On September 18, 2006, Mr. Aberle, through counsel, filed a "Motion to Revoke Order of Detention." It is not clear that the motion to revoke Judge Vadas' Order is supported by information that was not available and was not presented to the court in connection with the initial detention proceedings. In any event, after a hearing on the motion that I held on September 21, 2006, I reached the same conclusion that Judge Vadas reached earlier: that there are no conditions that could be imposed on Mr. Aberle's pretrial release that would provide reasonable assurance that he would make the

appearances he will be required to make in this case (including any order to surrender to serve a custodial sentence that might be imposed).

Counsel for Mr. Aberle argued at the hearing before me that his detention amounts to additional punishment for having absconded from probation once in the past and that there is no evidentiary support, beyond the fact that he absconded once, for the government's contention that Mr. Aberle now poses a serious risk of flight. The court rejects both of these positions. Mr. Aberle is being detained only because he poses a serious risk of flight – not as a form of punishment for anything. And the considerations that support the court's finding about the risk of flight that Mr. Aberle presents extend well beyond the fact that he absconded from supervision in 2004.

The court recognizes that Mr. Aberle, while out of custody, made many court appearances in connection with the prosecution that resulted in his conviction in Contra Costa County in 2004 for resisting arrest. That fact certainly is relevant to the decision about detention in the current circumstances. It is overshadowed, however, by a host of considerations that cut in the opposite direction.

In the prosecution pending here, Mr. Aberle and his wife are charged with two counts of tax evasion. In addition, Mr. Aberle is charged with two counts of filing false tax returns for a business he allegedly ran. These charges give rise to no presumption hostile to pretrial release – but they expose Mr. Aberle to the possibility of being sentenced to several years in federal prison, a prospect much more unnerving than the relatively modest local jail time he faced when he was being prosecuted in Contra Costa County for resisting arrest.

The charges pending in this court also suggest that Mr. Aberle and his wife received considerable income in 1999 and 2000. The grand jury found probable cause to believe that in 1999 the couple had income in excess of $550,000 (all unreported to the IRS) and that in 2000 the couple had income in excess of $140,000 (also unreported). The grand jury also found probable cause to believe that Mr. Aberle filed tax returns in the spring of 2000 and 2001 for his company (an unlicensed private business he claims to have run for some 15 years) in which he claimed business expenses of just under $330,000 for the company's tax year ending June 30, 1999, and of $478,190, for the tax year ending June 30, 2000. There also is reason to believe that Mr. Aberle has owned substantial property in the past. He told pretrial services that at one point he owned three homes in the Bay Area (around Antioch) – two of which he allegedly sold and one of which he says was repossessed. Thus, while his counsel argues that Mr. Aberle "does not have the means to flee," there is reason to believe that in the past he has been able to generate large incomes and to acquire significant property – but there has been no proffer about what happened to resources he had in the past. Instead, without any showing of sources of income or of gainful employment during the past several years, he has been able to support his wife and seven children – and to travel with them extensively. So it is far from clear that Mr. Aberle would not have the means to flee if he were released.

Nor is it clear that Mr. Aberle has had a stable residential history for the past several years. He told the court during the hearing today that he had not resided in the Bay Area for six or seven years. But in June he told Pretrial Services that he had been residing in Antioch for about seven years. He could not remember the addresses of either of the two homes in Antioch in which he claims to have resided. Simultaneously, he told Pretrial Services that he had lived in El Salvador for all of 2005 and in Canada for six months of 2003. He also admitted that he did not have a permanent residence in the Bay Area to which he could return if he were released

from custody. Apparently his wife and children were staying in Antioch temporarily this past Spring, but they have now relocated to Nebraska. Mr. Aberle's parents reside in Colorado, where he was raised. Thus, he has no family in our district (in all of California, for that matter) and no remaining property or employment ties to our communities.

In addition to the foreign travel described above, Mr. Aberle told Pretrial Services that he lived in Portugal for a year in 1992 and that he has traveled throughout Europe. He obviously is not intimidated by overseas travel or the prospect of residing for an extensive period in a foreign country.

When viewed against this backdrop, the fact that Mr. Aberle has not been able to proffer a single person who is willing to sign a bond on his behalf takes on additional significance. Even his parents have not come forward. He appears to have been able to sustain no strong interpersonal connections, outside his wife and children, for years. According to his father, in the past, when Mr. Aberle decided, independently, that it was time to leave Colorado, he "just picked-up and left with his family."

There is more. Mr. Aberle has engaged in a course of conduct over the past four years that suggests, strongly, that he has no respect for the law or for sources of authority outside himself. In August of 2002 he was riding a bicycle without a light down the middle of a dark street during the night. When officers of the Antioch Police Department directed him to move over to the side of the road, he at first complied, but then rode his bike back out into the middle of the rural roadway. The officers directed him, again, to return to the side of the street. He responded by telling them to "fuck off." A physical altercation ensued in which the defendant and two of the officers were injured (one of the officer's injuries were serious enough to

4

cause him to be kept in the hospital overnight). In 2004, based on this conduct, a jury convicted Mr. Aberle of forcefully resisting arrest.

The sentence imposed on Mr. Aberle as a result of this conviction required him to contact a Collections and Compliance Unit within ten days to make arrangements to pay a $200 fine and to contribute $50 per month toward the cost of his supervision. He also was ordered to complete the jail time that remained unserved under his sentence (45 days remained) through the custody alternative program. Mr. Aberle complied with none of these conditions. Instead, after advising the Probation Officer by email in the summer of 2004 that he had been "given no written order to contact your office [but that he was] contacting you as a courtesy," and after being ordered by responsive email to report in person to the Probation Office, Mr. Aberle fled. He spent the next 18 months or so as a fugitive. For a year of that period, he resided with his family in El Salvador. While there, he maintained a web site on which he criticized the Antioch police and the "California system of injustice" and posted pictures of himself with a firearm (one photo) and with what appeared to be an explosive device (another photo). He also announced on his website that in September of 2004 he was fined $2,100 in Fort Bragg, California for "illegally celebrating freedom," and that he could no longer drive in Nebraska because he had been convicted of driving without a seatbelt after his car had been "invaded and searched for seatbelts." Under the terms of his sentence, he was not permitted to be in Nebraska without permission in advance from his Probation Officer and he was prohibited from possessing firearms or other weapons. Needless to say, he had neither sought nor received permission to travel to Nebraska or El Salvador.

Mr. Aberle never voluntarily returned to Contra Costa County to satisfy the terms of his sentence. Instead, at the end of February of this year he was arrested on a fugitive warrant at the Atlanta (Georgia) airport – apparently after arriving there on

a flight from Panama. He was returned in custody to the local authorities, found to be in violation of the terms of his post-conviction supervision, and sentenced to one year in jail. He completed that custodial time earlier this summer, when he began seeking release on the pending federal charges.

None of the facts outlined above were contested at the bail hearing before me. From this record, it is clear that Mr. Aberle is fully prepared to decide for himself whether and under what circumstances he will comply with the law and with court orders. In addition, he may well have a serious problem with impulse control. In any event, given all the considerations set forth above, the court concludes that no combination of conditions would provide reasonable assurance that Mr. Aberle would make his appearances and meet his obligations in this matter if he were released before trial. The court therefore ORDERS MR. ABERLE DETAINED.

IT IS SO ORDERED.

Dated: September 21, 2006.

WAYNE D. BRAZIL
United States Magistrate Judge

Copies to:
All parties via ECF, Marshal,
WDB, Stats, Pretrial, Monica Tutson (MJJ's Clerk)